FILED

2015 DEC -3 PM 2: 54

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS, FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

Case No. _____

TFG LIFE SETTLEMENTS, LLC,
a Delaware limited liability company,

    Plaintiff,

vs.

2:15-CV-755-FtM-38CM

CENTURION INSURANCE SERVICES
GROUP, LLC, an Ohio limited liability
company, and CENTURION ISG (EUROPE)
LIMITED, an Irish corporation,

    Defendants.

_____/

## VERIFIED COMPLAINT FOR BREACH OF CONTRACT, SPECIFIC PERFORMANCE, AND INJUNCTIVE RELIEF

Plaintiff TFG LIFE SETTLEMENTS, LLC ("TFG"), complains of Defendants CENTURION INSURANCE SERVICES GROUP, LLC and CENTURION ISG (EUROPE) LIMITED (collectively, "Centurion") as follows:

### SUMMARY OF CLAIM

1. This is an action for specific performance and injunctive relief as provided by contract arising from a classic case of seller's remorse. TFG agreed to purchase from Centurion, and Centurion agreed to sell to TFG, through Bank of Utah as the securities intermediary for both parties in the transaction ("Securities Intermediary"), three insurance policies (the "Winemiller Policies"). The parties executed written agreements and TFG fully performed all of its contractual obligations, however, Centurion now refuses to consummate the sale just one day after it signed the contracts at issue. Centurion's refusal is without justification or excuse.

2. Like real estate, life insurance policies are unique. Recognizing the compensatory damages would not adequately compensate either party for the other's breach and that time is of the essence, the parties expressly contracted for specific performance of the sale transactions and for the imposition of immediate injunction relief without bond. The parties further agreed that the non-breaching party could obtain attorneys' fees and costs related to the enforcement of the agreements. By way of this action, TFG seeks specific performance of the parties' agreement, injunctive relief preventing Centurion from selling the Winemiller Policies to anyone other than TFG and to take all steps necessary to ensure that the Winemiller Policies remain valid and in force, its attorneys' fees in bringing this action, and costs.

## JURISDICTION AND VENUE

3. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiff TFG is a Delaware limited liability company with its principle place of business in Naples, Florida. Defendant Centurion Insurance Services Group, LLC is an Ohio limited liability company with its principle place of business in Cincinnati, Ohio. Defendant Centurion ISG (Europe) Limited is an Irish corporation with its principle place of business in Belfast, Ireland. The amount in controversy exceeds $75,000.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as a substantial part of the events and omissions giving rise to TFG's claims, described *herein*, occurred in the Middle District of Florida.

5. This case is properly lodged in the Ft. Myers Division of the Middle District of Florida because a substantial part of the events occurred in Collier County.

## THE PARTIES

6. TFG is a Delaware limited liability company with its principle place of business at 821 5th Ave., Suite 202, Naples, Florida 34102.

7. Centurion Insurance Services Group, LLC is an Ohio limited liability company with its principle place of business at 201 East 5th Street, 19th Floor, Cincinnati, OH 45202.

8. Centurion ISG (Europe) Limited is an Irish corporation with its principal place of business at the Forsyth House, Cromac Square, Belfast BT2 8LA, Ireland.

9. TFG is a private equity fund engaged in the life settlements industry. A life settlement is the purchase and sale of a life insurance policy to a third party for a value in excess of the policy's cash surrender value, but less than its face value. As part of a typical life settlements transaction, a policy owner receives a cash payment in exchange for transferring ownership of the policy to the purchaser.

10. Like TFG, Centurion is in the life settlements industry. Centurion Insurance Services Group, LLC was, at all relevant, times acting as the agent for Centurion ISG (Europe) Limited and possessed all of the requisite authority to enter into the agreements at issue and to bind Centurion ISG (Europe) Limited to the sale of the Winemiller Policies. Upon information and belief, at all relevant times, Centurion ISG (Europe) Limited was the beneficial owner of the securities account to which the Securities Intermediary had credited the the Winemiller Policies.

## FACTUAL BACKGROUND

11. As a buyer and seller of life settlements, TFG has developed relationships with various companies who present TFG with policies for purchase and who assist TFG in marketing its policies in the secondary and tertiary markets for life insurance, including Alex Barba of Life Force Financial and Justin Eriksen of One Degree Strategies, LLC.

12. On or about November 22, 2015, TFG was approached by Mr. Barba and Mr. Eriksen regarding the possibility of purchasing three policies from Centurion, all insuring the life of Jimmy D. Winemiller in the total amount of $25 million (the "Winemiller Policies").

13. TFG was told that Centurion was having financial issues and that it was no longer in a financial position to maintain the Winemiller Policies through the payment of premiums beyond December 31, 2015. On or about November 23, 2015, the parties agreed to a purchase price of $1.8 million for the Winemiller Policies. Thereafter, counsel for the parties began drafting and negotiating the purchase agreements.

14. During the course of the parties' negotiations, TFG discovered that the policy issued by Aviva Life and Annuity Company (USA) had entered into a grace period, meaning that Centurion had not timely paid the premiums owed on the policy in the amount of $255,008.66 necessary to keep the policy in force. A true and correct copy of the carrier's claim for payment of this amount showing a due date of December 4, 2015 at 12:00 a.m. is attached hereto as **Exhibit A**. As a result, the parties revised the purchase agreement for the Aviva Policy so that Centurion would either pay the premium on or before December 3, 2015 or a portion of the purchase price for that policy would be held in reserve to pay the premium after closing.

15. On December 1, 2015, TFG and Centurion executed three purchase agreements, one for each of the Winemiller Policies being purchased.

16. Other than the policy specific information, and a provision in the PSA for the Aviva policy related to the premium necessary to get the policy out of grace, all three purchase agreements are identical in their terms. For example, each of the agreements provides, as part of the representations and warranties made by Centurion, that "th[e] Agreement has been duly

authorized, executed and delivered by it and constitutes a legal, valid and binding obligation of Seller, enforceable against it in accordance with its terms . . . ."

17. On December 1, 2015, the Bank of Utah confirmed to Centurion that TFG had on deposit with the Bank of Utah the purchase prices for the Winemiller Policies.

18. Despite entering into fully enforceable and binding agreements for the sale of the Winemiller Policies to TFG, Centurion subsequently instructed the Securities Intermediary on December 1, 2015 to hold off on closing the sale until it received further instructions from Centurion.

19. The following day, on December 2, 2015, Marshall Seeman and Brian Schwartz from Centurion called Gary Brecka of TFG to inform him that Centurion would not proceed with the sale of the Winemiller Policies. Specifically, Mr. Schwartz stated that Centurion had made other arrangements to sell the policies to another buyer. Mr. Seeman emphatically informed Mr. Brecka that the sale would not occur and welcomed the filing of this lawsuit.

20. TFG's subsequent efforts to convince Centurion to honor the terms of the purchase agreements and consummate the sale have been unsuccessful. TFG has subsequently discovered that the reason for Centurion's decision to breach the parties' agreements is because it has received offers on each of the policies that, in total, exceed TFG's offer by more than $1 million.

21. TFG now seeks specific performance of the parties' agreements, a temporary restraining order and preliminary injunction to ensure that the policies are not sold to another buyer and that they remain valid and in force, attorneys' fees, and costs.

## COUNT I

**Breach of Written Contracts**

22. TFG repeats and realleges each allegation contained in paragraphs 1 through 21 above, as though fully set forth herein.

23. On December 1, 2015, TFG and Centurion entered into three agreements for the purchase of three insurance policies insuring the life of Jimmy D. Winemiller as follows:

   a. TFG agreed to purchase from Centurion, and Centurion agreed to sell to TFG, an insurance policy issued by John Hancock Life Insurance Company, Policy No. 95475091, insuring the life of Jimmy D. Winemiller with a death benefit of $10 million (the "John Hancock Policy"). The parties agreed that the purchase price for the John Hancock Policy was $1,025,000. A true and correct copy of the Purchase and Sale Agreement for the John Hancock Policy is attached hereto as **Exhibit B**;

   b. TFG agreed to purchase from Centurion, and Centurion agreed to sell to TFG, an insurance policy issued by Aviva Life and Annuity Company (USA), Policy No. IL02139410, insuring the life of Jimmy D. Winemiller with a death benefit of $10 million (the "Aviva Policy"). The parties agreed that the purchase price for the Aviva Policy was $700,000 subject to a hold back of $255,008.66 for the payment of outstanding premiums. A true and correct copy of the Purchase and Sale Agreement for the Aviva Policy is attached hereto as **Exhibit C**;

   c. TFG agreed to purchase from Centurion, and Centurion agreed to sell to TFG, an insurance policy issued by Zurich American Life Insurance Company, Policy No. 151301, insuring the life of Jimmy D. Winemiller with a death benefit of $5 million (the "Zurch Policy"). The parties agreed that the purchase price for the

Zurich Policy was $75,000. A true and correct copy of the Purchase and Sale Agreement for the Zurich Policy is attached hereto as **Exhibit D**.

24. The Effective Dates for each of the three purchase agreements was November 25, 2015.

25. By executing the three purchase agreements, Centurion expressly agreed to sell each of the Winemiller Policies for the amounts stated therein. Each of the agreements state that "this Agreement is irrevocably binding upon the Parties . . . ." Moreover, Centurion expressly "consent[ed] and agree[ed] to sign, execute, acknowledge, deliver, record and/or file any and all future documentation and provide and supply additional information that is reasonably requested by Purchaser" in order to consummate the sale of the Winemiller Policies to TFG.

26. TFG performed its obligations under each of the purchase agreements by depositing into its purchase account at Bank of Utah monies sufficient to cover the entire purchase price for each policy. Bank of Utah confirmed to Centurion on December 1, 2015 that TFG had more than sufficient funds on deposit to pay for the Winemiller Policies.

27. Nonetheless, Centurion breached the parties' agreements when it informed TFG on December 2, 2015 that it would not proceed with the sale of the Winemiller Policies because it was going to sell the policies to another buyer.

28. The purchase agreements entitle TFG to specific performance of the sale transactions. The parties specifically agreed that "irreparable harm would occur if any of the provisions of this Agreement were not performed in accordance with their specific terms on a timely basis or were otherwise breached." As a result, the parties further agreed that "without posting bond or other undertaking, the Parties shall be entitled to injunctive or equitable relief to

prevent breaches of this Agreement and to enforce specifically the terms and provisions of this Agreement in any court of competent jurisdiction . . . ."

29. The purchase agreements also entitled TFG to recover its attorneys' fees and costs. The agreements also require Centurion to indemnify and hold TFG harmless for any and all actual losses, including reasonable attorneys' fees, related to any breach of the purchase agreements by Centurion. In addition, the agreements provide that [i]n the event of any action or suit brought by either Party against the other Party in connection with this Agreement or any of the transactions contemplated hereby, the prevailing Party in such action or suit shall be entitled to recover from the other Party the reasonable expenses, costs and attorneys' fees incurred by such prevailing Party in connection with such action or suit."

30. The parties agreed that time was of the essence for the closing of their transactions.

## COUNT II

### Breach of Oral Contracts

31. TFG repeats and realleges each allegation contained in paragraphs 1 through 30 above, as though fully set forth herein.

32. In the event that the Court finds that the parties did not enter into written agreements for any of the Winemiller Policies, TFG alleges in the alternative that it and Centurion entered into valid and enforceable oral agreements for the purchase of the Winemiller Policies.

33. As alleged above, the parties orally agreed to the material terms of the sale of the Winemiller Policies when Centurion accepted TFG's offer to purchase each of the policies on November 23, 2015.

34. The parties orally agreed to additional terms for the purpose of the Winemiller Policies on November 30, 2015. All of the terms orally agreed upon by the parties were memorialized in final, unexecuted, drafts of the three purchase agreements shared between Mr. Maxson and Mr. Hodge. These terms included the irrevocable nature of the agreement, the right of TFG to seek specific performance to enforce the agreement and injunctive relief to prevent the sale or injury to the policies, the right to recover attorneys' fees, and TFG's right to be indemnified and held harmless as a result of Centurion's breach – all as evidenced in Exhibits B-D attached hereto and incorporated herein by reference.

35. Centurion breached the parties' oral agreements on December 2, 2015 when it unequivocally stated that it would not proceed with the sale of the Winemiller Policies to TFG and again when it, upon information and belief, entered into an oral or written agreement with another buyer or buyers to purchase all three policies.

36. TFG performed all obligations owed of it under the parties' agreements, including the depositing of the total purchase price with the Bank of Utah.

37. Centurion's breach of the parties' agreements was not excused.

38. TFG seeks specific performance, injunctive relief, contractual attorneys' fees, and costs pursuant to this Count.

**WHEREFORE,** TFG prays for the following relief:

1. Temporary, Preliminary and Permanent injunctive relief, restraining Centurion and its agents, brokers, intermediaries, servants, employees, representatives, contractors, principles, members, affiliates and anyone acting on its behalf, at its direction, or in concert therewith, including but not limited to Bank of Utah, from (a) offering for sale, selling, transferring, gifting, or conveying the Winemiller Policies to any person other than TFG; (b)

## VERIFICATION OF COMPLAINT

I, Gary Brecka, being duly sworn, depose and verify as follows under penalty of perjury: I am the Administrator for TFG Life Settlements, LLC. I have read the foregoing Verified Complaint and know the contents thereof. The factual representations contained herein are true to my knowledge, except those matters stated to be alleged upon information and belief, and as to those matters I believe them to be true. For clarity, this verification does not include legal allegations or conclusions which I am not qualified to address.

Executed on this 3rd day of December 2015.

By: _____
Name: Gary Brecka
Title: Administrator
TFG Life Settlements, LLC

permitting the Winemiller Policies to be subject to any encumbrances or liens; and (c) allowing the Winemiller Policies to lapse, enter into a grace period or otherwise be adversely affected, until further order of this Court;

2. For specific performance of the purchase agreements for each of the Winemiller Policies thereby completing the sale of the Winemiller Policies to TFG;

3. For its reasonable attorneys' fees and costs; and

4. Any other further relief this Court deems proper or to which TFG may legally or equitably be entitled.

        Respectfully submitted,

Ring Bender McKown & Castillo, LLLP
One Alhambra Plaza, Suite 620
Coral Gables, FL 33134
Telephone: (786) 235-2030
Facsimile: (786) 703-1481
E-Mail: ccastillo@ringbenderlaw.com
       amckown@ringbenderlaw.com
       lgonzalez@ringbenderlaw.com

By: /s/ Carlos B. Castillo
    Carlos B. Castillo
    Florida Bar No. 907741