UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

Case No. _____

TFG LIFE SETTLEMENTS, LLC,
a Delaware limited liability company,

    Plaintiff,

vs.

CENTURION INSURANCE SERVICES
GROUP, LLC, an Ohio limited liability
company, and CENTURION ISG (EUROPE)
LIMITED, an Irish corporation,

    Defendants.

_____/

## DECLARATION OF JAMES MAXSON

Pursuant to 28 U.S.C. § 1746, James W. Maxson declares as follows:

1. My name is James W. Maxson. I am an attorney licensed to practice law in the State of Georgia. I am a partner with the law firm of Culhane Meadows PLLC in Atlanta, Georgia and counsel for Plaintiff TFG Life Settlements, LLC ("TFG") with respect to certain transactional matters. I have personal knowledge of the matters set forth in this Declaration and if called upon to testify in court, I could and would competently do so.

2. On or about November 23, 2015, I was contacted by Gary Brecka at TFG regarding TFG's agreement to purchase three policies from Centurion Insurance Services Group, LLC as agent for Centurion ISG (Europe) Limited (collectively, "Centurion") insuring the life of Jimmy D. Winemiller (the "Winemiller Policies") as follows:

   a. an insurance policy issued by John Hancock Life Insurance Company, Policy No. 95475091, insuring the life of Jimmy D. Winemiller with a death benefit of $10 million (the "John Hancock Policy");

   b. an insurance policy issued by Aviva Life and Annuity Company (USA), Policy No. IL02139410, insuring the life of Jimmy D. Winemiller with a death benefit of $10 million (the "Aviva Policy"); and

    c. an insurance policy issued by Zurich American Life Insurance Company, Policy No. 151301, insuring the life of Jimmy D. Winemiller with a death benefit of $5 million (the "Zurich Policy").

3. I was subsequently put in contact with Centurion's in-house counsel, Alan Hodge, for the purpose of negotiating the terms of the purchase and sale agreements for the policies.

4. Over the course of the next week, Mr. Hodge and I negotiated various terms and exchanged revised drafts of the purchase and sale agreements, which culminated in the finalization of terms on or about November 30, 2015. Other than the policy-specific terms, the general terms of the purchase and sales agreements were identical.

5. At 5:24 p.m. on November 30, 2015, I received from Mr. Hodge Centurion's execution of the purchase and sale agreement for the Zurich Policy. A true and correct copy of the email and attachment containing the executed copy of the purchase agreement for the Zurich Policy is attached hereto as **Exhibit A**.

6. At 6:42 p.m. on November 30, 2015, I received from Mr. Hodge Centurion's execution of the purchase and sale agreement for the John Hancock Policy. A true and correct copy of the email and attachment containing the executed copy of the purchase agreement for the John Hancock Policy is attached hereto as **Exhibit B**.

7. At 7:18 p.m. on November 30, 2015, I received from Mr. Hodge Centurion's execution of the purchase and sale agreement for the Aviva Policy. A true and correct copy of the email and attachment containing the executed copy of the purchase agreement for the Aviva Policy is attached hereto as **Exhibit C**.

8. At 8:54 p.m. on December 1, 2015, I provided TFG's counter-signatures to the executed purchase and sale agreements for all three Winemiller Policies. A true and correct copy of my email and attachment with TFG's signatures pages is attached hereto as **Exhibit D**.

9. At the time that I sent TFG's signature pages, Mr. Hodge had taken the position that Centurion provided its signature pages "in escrow," and that further direction was required from Centurion in order to release them to TFG. However, the signature pages were sent with no such limitations or conditions, and none of the purchase and sale agreements nor any discussions between myself and Mr. Hodge contemplated that the signature pages were not intended to bind Centurion upon receipt, which I explained in my 8:54 p.m. email to Mr. Hodge.

    Executed on this 2nd day of December, 2015.

_____
JAMES W. MAXSON

3